**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **LEINBACH COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26-CV-0360-CVE-CDL** |
| | ) | |
| **ALLEGION US HOLDING COMPANY, INC.,** | ) | |
| **SCHLAGE LOCK COMPANY, LLC,** | ) | |
| **ADVANT SOLUTIONS, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

Before the Court is defendant Advant Solutions, LLC's (Advant) motion to dismiss (Dkt. # 14), and defendants Allegion US Holding Company, Inc. (Allegion) and Schlage Lock Company, LLC's (Schlage) motion to dismiss and brief in support (Dkt. # 16). Plaintiff Leinbach Company has opposed the motions (Dkt. # 22; Dkt. # 23). Advant has replied (Dkt. # 25), as well as Allegion and Schlage, jointly (Dkt. # 24).

**I.**

Plaintiff operates an apartment complex, known as Crown at Seven Oaks (Seven Oaks), located in Tulsa, Oklahoma. Dkt. # 2, at 2. On August 22, 2022, plaintiff entered into a contract with Advant to purchase and install at Seven Oaks: 313 electronic locking deadbolts, 308 passage levers, 7 cylindrical locks, 750 key fobs, 1 fob programmer, and the accompanying installation hardware. Id. at 3. On September 7, 2023, plaintiff entered into an additional contract with Advant to purchase and install at Seven Oaks: 48 deadbolts, 48 levers, and the accompanying installation hardware. Id. The total paid by plaintiff for parts and installation was $126,442.30 ($111,210.43 under the first contract; $15,231.87 under the second contract). Id.

In or around October 2024 through March 2025, plaintiff received forty-five separate work orders from tenants at Seven Oaks due to malfunctioning deadbolts. Id. Plaintiff alleges that the thumb turn of the deadbolts would "freely spin," causing the deadbolts to neither lock nor unlock. Id. As a result of the malfunctioning deadbolts, Seven Oaks tenants could not lock their apartments upon leaving or became locked out of their apartments. Id. Plaintiff alleges that all defendants manufactured, sold, supplied, marketed, and distributed the deadbolts and associated hardware that plaintiff purchased for installation at Seven Oaks. Id. at 7.

On or around November 20, 2024, plaintiff alleges that Allegion was made aware of the malfunctioning deadbolts via email to Hal White, a multifamily development consultant employed by Allegion. Id. at 4. On or around January 21, 2025, Tammy Sauer, manager of Seven Oaks, emailed Hal White again regarding the malfunctioning deadbolts and informed him that the malfunctions might be due to the cold weather. Id. On that same day, Hal White replied that the deadbolts are "rated for cold weather" and that further investigation was required to discover the true cause of the malfunctions. Id. Plaintiff alleges that, prior to plaintiff's purchase of the deadbolts, Allegion and Schlage expressly warranted that the deadbolts were operable during all temperatures in Oklahoma, including cold weather. Id. at 6.

On August 28, 2025, plaintiff sent Allegion a demand letter seeking to remedy the malfunctioning deadbolts before the next winter arrived. Id. at 4. On or around October 14, 2025, Allegion sent two employees to Seven Oaks to examine fifteen of the malfunctioning deadbolts. Id. During the examination, two Allegion employees showed plaintiff rust spots inside the deadbolts, indicating this was the cause of the malfunctions. Id. Plaintiff alleges that eight deadbolts were taken to an Allegion facility for further examination. Id. Despite the on and off-site examinations,

plaintiff alleges that none of the defendants has made any further effort to resolve, repair, or replace the malfunctioning deadbolts. Id. In or around October 2025 through February 2026, plaintiff received an additional forty-one work orders regarding the malfunctioning deadbolts. Id.

Plaintiff alleges four claims for relief. Plaintiff's first and second claims are asserted against Allegion and Schlage for (1) breach of implied warranty of merchantability and fitness for particular purpose[1] and (2) breach of express warranty. Plaintiff's third claim, asserted against all defendants, is for fraudulent inducement and constructive fraud. Plaintiff's fourth claim, breach of contract, is asserted against Advant only.

## II.

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id.

---

[1] Plaintiff titled its first claim as "breach of implied warranty of merchantability" only. Dkt. # 2, at 5 (emphasis added). Nevertheless, in the body of this claim, plaintiff alleges that Allegion and Schlage "impliedly warranted that the [d]eadbolts would operate as represented in a good and operable manner and would be reasonably fit for the intended use at Seven Oaks." Id. Plaintiff also references both the implied warranty of merchantability and fitness for particular purpose under the separate statutory sections. Accordingly, the Court finds that plaintiff has asserted a claim for breach of both implied warranties: merchantability (Okla. Stat. tit. 12A, § 2-314) and fitness for particular purpose (Okla. Stat. tit. 12A, § 2-315). While it would have been preferable to assert each as a separate claim, the Court will consider, for purposes of this motion, plaintiff's first claim as asserting breach of both implied warranties. However, in the pretrial order, jury instructions, and verdict form, each implied warranty claim shall be treated separately.

(internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft, 556 U.S. at 684. For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

**III.**

As a threshold matter, the Court addresses whether it has subject-matter jurisdiction. Allegion and Schlage argue that the Court lacks subject-matter jurisdiction because plaintiff did not properly plead the citizenship of the two limited liability company (LLC) defendants, Schlage and Advant. Dkt. # 16, at 13. The complaint states that Schlage is a "Delaware limited liability company with its principal place of business [in] . . . Indiana," and Advant is a "Nevada limited liability company with its principal place of business [in] . . . Texas." Dkt. # 2, at 2.

To establish diversity jurisdiction, "[a]n LLC, as an unincorporated association, takes the citizenship of all its members." Siloam Springs Hotel, L.L.C. v. Century Sur. Co., 781 F.3d 1233, 1234 (10th Cir. 2015). Although it is true that plaintiff did not properly identify the citizenship of the LLC defendants, Allegion and Schlage admit that they "do not dispute that the disclosure statements [Dkt. # 17; Dkt. # 20] establish complete diversity." Dkt. # 24, at 1. Still, Allegion and Schlage argue that subject-matter jurisdiction must be affirmatively pled, not supplied by later filings.

The committee note on the 2022 amendment to Federal Rule of Civil Procedure 7.1 states that "disclosure does not relieve a party that asserts diversity jurisdiction from the Rule 8(a)(1) obligation to plead the grounds for jurisdiction, but is designed to facilitate an early and accurate determination of jurisdiction." Here, plaintiff has affirmatively pled diversity jurisdiction. In the complaint, plaintiff alleges that, "[u]pon information and belief[,] all [d]efendants are diverse from the [p]laintiff." Dkt. # 2, at 2. The disclosure statements filed by defendants confirm that complete diversity exists. The Court is satisfied that plaintiff sufficiently pled diversity jurisdiction, which the Court has determined is accurate based on defendants' disclosure statements.

**IV.**

Defendants move to dismiss each of plaintiff's claims for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

**A.**

Allegion and Schlage seek dismissal of plaintiff's first claim for breach of implied warranties, arguing that there is no vertical privity between plaintiff and Allegion and Schlage. Dkt. # 16, at 6. Allegion and Schlage argue that, under Oklahoma's Uniform Commercial Code (UCC),

implied warranties arise from a contract for the sale of goods by a seller. Id. Allegion and Schlage argue that, because plaintiff entered into the contract with Advant only, Allegion and Schlage do not "owe[] implied warranty obligations." Id. at 8.

It is well-established that in Oklahoma, "a manufacturer may be held liable for breach of implied warranty of merchantability or fitness for particular purpose under the [UCC] without regard to privity of contract between the manufacturer and the ultimate buyer." Old Albany Ests., Ltd. v. Highland Carpet Mills, Inc., 604 P.2d 849, 852 (Okla. 1979). Plaintiff alleges that Allegion and Schlage manufactured, sold, supplied, marketed, and distributed the deadbolts and accompanying hardware provided and installed at Seven Oaks. Dkt. # 2, at 5. Therefore, plaintiff may seek to hold Allegion and Schlage liable for breach of implied warranties, notwithstanding the lack of privity.

Allegion and Schlage further argue that plaintiff has failed to plausibly allege that the deadbolts were unmerchantable when sold. Dkt. # 16, at 7. Allegion and Schlage contend that plaintiff "does not identify a manufacturing defect, design defect, deviation from specifications, industry-standard violation, or any other factual basis" from which it can be inferred that the deadbolts were defective at the time of sale. Id. Allegion and Schlage argue that "product-performance issues observed years after installation" are insufficient to show that the deadbolts were defective at the time of sale. Id.

Under Oklahoma law, a warranty of merchantability is implied in every contract for the sale of goods. Okla. Stat. tit. 12A, § 2-314. The implied warranty of merchantability is not indefinite, but lasts for a reasonable time only. Hoort v. Oklahoma Truck Parts, Inc., 650 P.2d 71, 73 (Okla. Civ. App. 1981). Based on the complaint, plaintiff has plausibly alleged breach of the implied warranty of merchantability. Plaintiff alleges that it entered into a contract for the purchase and

installation of deadbolts and the accompanying hardware at Seven Oaks. Dkt. # 2, at 5. Plaintiff alleges that, during cold temperatures, many of the deadbolts malfunctioned, "freely spin[ning], causing the deadbolt[s] to neither lock nor unlock." Id. at 3. Plaintiff also alleges that two Allegion employees observed that some of the deadbolts were malfunctioning. Id. at 4.

Although the defects were not observed until some time after the purchase and installation of the deadbolts, plaintiff has plausibly shown that the defects could not be discovered immediately because the issues arose during cold temperatures. Whether the implied warranties were still in effect at the time the deadbolts malfunctioned is measured by the standard of reasonableness and, therefore, must be determined by a jury. See Elden v. Simmons, 631 P.2d 739, 740 (Okla. 1981). At the motion to dismiss stage, plaintiff is required only to allege sufficient facts to plausibly assert its claims, and any factual issues are reserved for resolution at a later stage. On the face of these allegations, plaintiff has alleged that the deadbolts were neither merchantable nor fit for the particular purpose of permitting Seven Oaks tenants to lock and unlock their apartments, even during cold weather.

**B.**

Allegion and Schlage also seek dismissal of plaintiff's second claim for breach of express warranty, arguing that plaintiff has not alleged the existence of any express warranty made by Allegion or Schlage. Dkt. # 16, at 8. Plaintiff alleges that Allegion and Schlage expressly warranted that the deadbolts could operate during all temperatures in Oklahoma, including cold weather conditions. Dkt. # 2, at 6. Plaintiff alleges that this express warranty was later confirmed in an email from Hal White to Tammy Sauer. Id. Plaintiff further alleges that Allegion and Schlage breached the express warranty by failing to provide plaintiff with deadbolts that operate during all weather

conditions in Oklahoma. Id. Plaintiff also alleges that Allegion and Schlage have not taken action to repair or replace the malfunctioning deadbolts. Id. at 4. Finally, plaintiff alleges financial loss as a result of the breach. Accordingly, plaintiff has shown that Allegion and Schlage made an express warranty, which was made part of the bargain and upon which plaintiff relied to its detriment.

Allegion and Schlage argue that plaintiff has failed to show the existence of an express warranty because plaintiff does not "allege the language of any warranty, the document or communication containing the warranty, who made the warranty, when it was made, or how it became part of [p]laintiff's purchasing decision." Dkt. # 16, at 9. Allegion and Schlage are incorrect that plaintiff has not alleged the language of the warranty; plaintiff alleges that the express warranty was that the deadbolts could operate during all temperatures in Oklahoma. At this stage, plaintiff is not required to provide evidence of the express warranty. Although plaintiff's allegation is concise, it is sufficient to plausibly state a claim for breach of express warranty.

**C.**

All defendants request dismissal of plaintiff's third claim alleging fraudulent inducement and constructive fraud, arguing that plaintiff has failed to plead fraud with the particularity required by Rule 9(b). Dkt. # 14, at 3; Dkt. # 16, at 11. Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." More specifically, the Tenth Circuit requires a complaint alleging fraud to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the

consequences thereof." Koch v. Koch Indus., Inc., 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting Lawrence Nat'l Bank v. Edmonds (In re Edmonds), 924 F.2d 176, 180 (10th Cir. 1991)).

Here, plaintiff does not set forth the specific and required allegations for a fraud claim. The general statement that the defendants "falsely represented that the deadbolts were rated for cold weather and could operate during cold weather conditions" does not state with specificity the content of the alleged misrepresentation. That complaint also does not alert the defendants to a sufficiently precise time frame to satisfy Rule 9(b), as it does not set out any time frame at all. In addition, the complaint does not allege the place where the false representation was made. Finally, plaintiff fails to identify which specific defendant(s) made the alleged fraudulent representation. Therefore, plaintiff has failed to properly plead fraudulent inducement.

Plaintiff's constructive fraud theory fares no better. Under Oklahoma law, constructive fraud occurs:

> 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or,
> 2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.

Okla. Stat. tit. 15, § 59. As relevant here, "[c]onstructive fraud is 'the concealment of material facts which one is bound under the circumstances to disclose.'" Specialty Beverages, L.L.C. v. Pabst Brewing Co., 537 F.3d 1165, 1180 (10th Cir. 2008) (quoting Bankers Trust Co. v. Brown, 107 P.3d 609, 613 (Okla. Civ. App. 2004)). To prevail on a claim of constructive fraud, a plaintiff must prove:

> (1) That the defendant owed plaintiff a duty of full disclosure. This duty could be part of a general fiduciary duty owed by the defendant to the plaintiff. This duty

could also arise, even though it might not exist in the first instance, once a defendant voluntarily chooses to speak to plaintiff about a particular subject matter;
(2) That the defendant misstated a fact or failed to disclose a fact to plaintiff;
(3) That the defendant's misstatement or omission was material;
(4) That plaintiff relied on defendant's material misstatement or omission; and
(5) That plaintiff suffered damages as a result of defendant's material misstatement or omission.

Id. at 1180-81. There is no requirement, however, that the plaintiff prove that the defendant acted with the intent to deceive. Id. at 1181.

Plaintiff's claim for constructive fraud is inadequate under Rule 9(b) for the same reasons discussed above regarding plaintiff's actual fraud claim. Plaintiff's complaint does not contain the specificity required for a constructive fraud claim. For example, plaintiff fails to distinguish among the defendants in assigning responsibility for the fraud. Plaintiff additionally fails to state with specificity the facts, circumstances, time, place, and date of the alleged misrepresentation on which it bases its claims.

Most fatal to plaintiff's actual and constructive fraud claim, which sounds in tort, is that there are no factual allegations to state a tort claim. Although Oklahoma law recognizes a tort claim may arise in the course of the performance of a contract, "the contract in such cases is the mere incident creating the relation furnishing the occasion for the tort," and the wrong giving rise to a tort claim must be independent of the conduct upon which the contract claim is based. Woolard v. JLG Indus., Inc., 210 F.3d 1158, 1168 (10th Cir. 2000) (quoting Hall Jones Oil Corp. v. Claro, 459 P.2d 858, 861 (Okla. 1969)). Allegations of fraud in an action based solely in contract are insufficient to state a cause of action for fraud. See id.

Plaintiff's allegations of fraud are indistinguishable from its contract claims. Plaintiff alleges, as the basis for its fraud claim, that all defendants falsely represented that the deadbolts were

rated for cold weather. This representation, however, was merely a statement that formed the basis of the parties' obligations arising under contract law. See Lewis v. Farmers Ins. Co., Inc., 681 P.2d 67, 69 (Okla. 1983) ("[A] tort is a violation of a duty imposed by law independent of contract. If the contract is merely the inducement which creates the occasion for the tort, the tort, not the contract, is the basis of the action."). The parties engaged in an arms-length transaction and did not have a special relationship under Oklahoma law. Plaintiff cannot repackage its contract claims into a tort claim by alleging that defendants intentionally engaged in conduct that is merely a form of breach of contract.

The damages plaintiff asserts for its contract claims and its fraud claim are identical–at least $126,442.30 in replacement and installation costs. Dkt. # 2, at 7. Thus, it is evident that the alleged injury arising from the fraud claim is nothing more than the economic loss arising from plaintiff's contract claims. Although plaintiff attempts to state a fraud claim by seeking punitive damages in its prayer for relief, plaintiff has not adequately pled fraud and cannot seek punitive damages for its contract claims. See Wilspec Techs., Inc. v. DunAn Holding Grp., Co., Ltd., 204 P.3d 69, 74 (Okla. 2009) ("Typically, punitive damages are not recoverable solely for breach of contract obligations.").

**D.**

Finally, Advant requests dismissal of plaintiff's fourth claim for breach of contract. Advant argues that plaintiff has not shown that Advant failed to install the locks as contracted and that Advant is not liable because Advant was not responsible for selecting the deadbolts. Dkt. # 14, at 5. The elements of a breach of contract action are: (1) formation of a contract; (2) breach of the contract; and (3) damages as a result of that breach. Digital Design Grp., Inc. v. Info. Builders, Inc.,

24 P.3d 834, 843 (Okla. 2001). "A breach of contract is a material failure of performance of a duty arising under or imposed by agreement." Lewis, 681 P.2d at 69.

Plaintiff alleges that plaintiff and Advant entered into a contract for the purchase and installation of deadbolts and accompanying hardware at Seven Oaks. Dkt. # 2, at 8. Plaintiff also alleges that Advant breached the contract by failing to provide deadbolts that could operate during cold weather conditions, as several of the provided deadbolts malfunctioned during the winter seasons. Id. Finally, plaintiff alleges that it suffered actual damages in the amount of at least $126,442.30 for the cost to replace and install new deadbolts at Seven Oaks. Id. Therefore, plaintiff has stated a claim for breach of contract. That plaintiff selected the deadbolts is irrelevant; plaintiff alleges that Advant's failure to furnish deadbolts suitable for cold weather conditions was a material breach of the contract.

**IT IS THEREFORE ORDERED** that defendant Advant Solutions, LLC's motion to dismiss (Dkt. # 14) and defendants Allegion US Holding Company, Inc. and Schlage Lock Company, LCC's motion to dismiss and brief in support (Dkt. # 16) are **granted in part** and **denied in part**. Plaintiff's third claim for relief, alleging fraudulent inducement and constructive fraud, and any claim for punitive damages are **dismissed**. Plaintiff's claims for breach of implied warranties of merchantability and fitness for particular purpose (against defendants Allegion and Schlage), breach of express warranty (against defendants Allegion and Schlage), and breach of contract (against defendant Advant) remain pending.

**IT IS FURTHER ORDERED** that a joint status report for the remaining claims is due **December 2, 2026**.

**DATED** this 19th day of November, 2026.

Claire V. Eagan

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE